IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Timothy T. Kinard, #304285 | ) | C/A No. 5:14-04391-BHH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Joseph Battle, | ) | |
| | ) | |
| Respondent. | ) | |
| ——————————————— | ) | |

Petitioner Timothy T. Kinard ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 24, 25. On March 30, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 26. On June 29, 2015, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment, ECF No. 37, and on July 9, 2015, Respondent filed a Reply, ECF No. 38. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 25, be granted.

I.    Background

Petitioner is currently incarcerated in the Abbeville County Detention Center. ECF No. 1 at 1. In 2003, Petitioner was indicted at the November term of the Saluda County Grand Jury for

first-degree burglary (2003-GS-41-372). App. 41-42.[1] Petitioner was also indicted in 2004 at the January term of the Saluda County Grand Jury for second-degree burglary (2004-GS-41-38), assault and battery of a high and aggravated nature ("ABHAN") (2004-GS-41-39), and assault and battery with intent to kill ("ABWIK") (2004-GS-41-40). App. 39-40, 717-22. Attorney Bradley Hansen represented Petitioner in a jury trial that convened the week of August 4, 2004, and Assistant Solicitor Ervin Maye represented the State. App. 342. Petitioner was tried before the Honorable William P. Keesley on the first-degree burglary charge and the ABWIK charge only. *Id.* at 342-45. After the trial, the jury found Petitioner guilty of both charges. App. 708. Judge Keesley sentenced Petitioner to 20-years imprisonment for the burglary conviction and a concurrent 15-year imprisonment for the ABWIK conviction. App. 713.

Attorney Hanson timely sought a direct appeal of the convictions and sentence on Petitioner's behalf. ECF No. 24-6. Assistant Appellate Defender Tara S. Taggart represented Petitioner on appeal and briefed the following issue pursuant to *Anders v. California*, 386 U.S. 738 (1967): "Whether the trial judge erred in failing to grant a directed verdict of acquittal where there was insufficient evidence of guilt." ECF No. 24-7. Additionally, Petitioner filed a pro se brief arguing: "The lower court erred by denying Appellant's motion for a directed verdict of not guilty of first degree burglary, when the state offered no evidence that he had intent to commit a crime and assault and battery with intent to kill, where there was insufficient evidence of guilt." ECF No. 24-9.

On May 3, 2006, the South Carolina Court of Appeals denied counsel's motion to be relieved and ordered appellate counsel to brief the following issue which it determined had arguable merit: "[w]hether the circuit court judge erred in not charging the jury on general intent

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF Nos. 24-1, 24-2, 24-3, 24-4.

for [ABWIK]?" ECF No. 24-10. Thereafter, on November 2, 2006, Appellate Defender Katherine Hudgins filed a Final Brief on Petitioner's behalf, arguing "[t]he trial court erring in refusing to charge the jury on the general intent required to convict for [ABWIK]." ECF No. 24-11. Assistant Attorney General Shawn L. Reeves filed a Response Brief on behalf of the State. ECF No. 24-12. On May 7, 2007, the Court of Appeals affirmed Petitioner's convictions and sentence in a published opinion. ECF No. 24-13. There, the court found "the trial court's jury instruction, which properly charged the jury regarding malice aforethought, to be without error." *Id.* at 6.

Thereafter, Petitioner filed a petition for rehearing, ECF No. 24-14, and on June 28, 2007, the Court of Appeals denied the petition, ECF No. 24-15. Attorney Hudgins then filed a Petition for Certiorari on Petitioner's behalf, ECF No. 24-16, and Assistant Attorney General Julie M. Thames filed a Return on the State's behalf, ECF No. 24-17. On April 3, 2008, the South Carolina Supreme Court denied the Petition for Certiorari, ECF No. 24-18, and on April 7, 2008, the Court of Appeals issued the Remittitur, ECF No. 24-19.

II.    Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on June 19, 2008 (2008-CP-41-111), asserting claims for ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. App. 25-36. In a document entitled "Memorandum of Points and Authorities Supporting Application for [PCR]," Petitioner asserted that his "trial counsel was ineffective for failing to object to closing arguments by the prosecution and failing to advise the Applicant of statutory provisions, thus depriving the Applicant due process of law guaranteed by the 14th. Amendment and ineffective assistance of counsel further depriving the Applicant his 6th. Amendment of the Constitution." *Id.* at 30. Assistant Attorney General Gregory P. Jones

filed a Return on behalf of the State. ECF No. 24-20. On January 13, 2010, Attorneys Franklin

G. Shuler Jr. and Joshua Shaw filed an Amended PCR Application on Petitioner's behalf. App.

43-77. In the Amended Application, Petitioner raised the following issues:

A.   Trial Counsel's decision to call [Petitioner's] brother as a witness while ignoring his convictions for essentially the same crimes constituted ineffective assistance of counsel.

B.   [Petitioner] received ineffective assistance of counsel because trial counsel failed to object to numerous improper statements made by the solicitor during the State's closing arguments, including improper statements of personal opinion as to the guilt of [Petitioner] and improper vouching for the credibility of the State's witness.

C.   [Petitioner] received ineffective assistance of counsel because trial counsel failed to undertake a reasonable independent investigation of the money allegedly taken from Mr. Bryan's home, failed to object to its introduction into evidence and failed to effectively cross-examine the State's witness regarding the alleged missing money.

D.   [Petitioner] received ineffective assistance of counsel because trial counsel failed to undertake a reasonable investigation of the available witnesses and failed to procure several witnesses for trial whose testimony would have corroborated [Petitioner's] trial testimony.

E.   Trial counsel was deficient in failing to object to a deficient indictment for first degree burglary, which merely stated the element of specific intent to commit a crime in generic terms.

F.   Even if any single deficiency would not have prejudiced [Petitioner], trial counsel's performance was deficient in numerous respects, the totality of which prejudiced [Petitioner].

*Id.* In addition to raising the six ineffective assistance of counsel claims, Petitioner also argued

that "the trial court improperly instructed the jury on the element of 'malice' under current South

Carolina law." *Id.* at 72-76.

A PCR hearing convened on September 16, 2010, before the Honorable R. Knox

McMahon. App. 99-241. Petitioner was present and represented by Attorneys Shuler and Shaw;

Assistant Attorney General A. West Lee appeared on behalf of the State. *Id.* Trial counsel

Bradley Hanson, witness Johnny Toole, Jr., and Assistant Solicitor Ervin Maye testified during

the hearing. *See id.* In an Order filed April 11, 2011, the PCR court denied Petitioner's PCR

Application in full, making the following findings of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (2003).

> *Counsel's Decision to Call Reginald Davis as Witness Without Making Motion in Limine to Exclude Prior Convictions or Objecting to the State's Line of Questioning Regarding Prior Offenses*

> With respect to this claim, this Court finds that the Applicant has failed to meet his burden of proof. This Court first finds Counsel's testimony that the Applicant wanted Counsel to call his brother to testify to be credible, while simultaneously finding the Applicant's testimony on this issue not to be credible. Next, this Court finds Counsel's testimony that it was a strategic decision to call Mr. Davis to the stand because he was the only person who could corroborate the Applicant's entire version of events to be credible. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) and McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, Counsel articulated valid strategic reasons for calling Mr. Davis to the stand. Further, this Court notes that Rule 609, as quoted by the Applicant, addresses the entry of the **defendant's** prior offenses into evidence, and further notes that witnesses are subject to a different standard. As such, this Court finds that the trial court would have likely allowed evidence of the witness's prior convictions in even if Counsel had made a motion in limine or objected to the State's line of questioning. In any event, as articulated by PCR Counsel, the convictions were Mr. Davis's, not the Applicant's. Therefore, this Court finds that the probative value of having a corroborating witness to the Applicant's version of evidence would be greater than the potential prejudice from calling that witness. As such, the Applicant has not shown that counsel was deficient in that choice of tactics. Therefore, this Court finds that the Applicant is unable to show that Counsel provided ineffective assistance of counsel, or prejudice resulting therefrom. Accordingly, this allegation is denied and dismissed.

*Failure to Object to Allegedly Improper Comments Made During Solicitor's
Closing Arguments*

With respect to this claim, this Court again finds that the Applicant has failed to meet his burden of proof. This Court finds Counsel's testimony that he saw nothing particularly objectionable about the Solicitor's statements in closing, and that it was his practice not to object in closing unless comments were egregious as not to draw further attention to them to be credible, and further finds that it was a strategic choice made by Counsel during trial. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) *and* McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, Counsel articulated valid strategic reasons for not voicing an objection during the Solicitor's closing argument. Further, the Applicant has not shown that counsel was deficient in that choice of tactics. As such, this Court finds the Applicant is unable to show either ineffective assistance of Counsel or resulting prejudice. Accordingly, this allegation is denied and dismissed.

*Trial counsel failed to undertake a reasonable independent investigation of money
taken from Victim's home, failed to object to its introduction into evidence and
failed to effectively cross-examine the State's witnesses regarding the missing
money*

With respect to this claim, this Court again finds that the Applicant has failed to meet his burden of proof. This Court finds that Counsel's testimony, as well as the Solicitor's testimony, that they were not aware of the missing money until a few weeks prior to trial to be credible. This Court also finds Solicitor's testimony regarding why no one spoke with the victim for an extended period of time prior to trial to possibly gain this information to be credible. Further, this Court finds that Counsel's testimony as to why he did not attack the victim on cross-examination regarding the issue, because he was an elderly, sympathetic figure and attacking him could impact the jury's view of his case negatively, to be credible, and a matter of trial strategy. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) *and* McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, Counsel articulated valid strategic reasons for choosing such a tactic. Further, the

Applicant has not shown that counsel was deficient in that choice of tactics as he has not shown that a different result would have been obtained if the money issue was further investigated. As such, this Court finds that the Applicant is unable to show that Counsel provided ineffective assistance for his actions regarding this issue. Finally, this Court notes that even assuming money had not been stolen from the residence, or assuming that Counsel had made a motion to exclude evidence of the money and won, the State was still able to prove the Applicant's unlawful entry, intent to commit a crime, and bodily injury done to the victim, and further notes that these elements alone were enough to satisfy the element of burglary. As such, even if the Applicant could show that Counsel provided ineffective assistance in this area, he is unable to prove resulting prejudice. Accordingly, this allegation is denied and dismissed.

*Failure to Investigate and Call Favorable Witnesses on the Applicant's Behalf*

With respect to this claim, this Court again finds the Applicant is unable to meet his burden of proof. This Court finds Counsel's testimony that he attempted to find Mr. Toole to be credible, while also finding Counsel's testimony that calling Mr. Toole to the stand would have been a risk because at most he could corroborate only a part of the Applicant's story and at worst could damage the Applicant's credibility by telling a different story to be a matter of trial strategy. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) *and* McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, Counsel articulated valid strategic reasons for not calling Mr. Toole to testify even if he could be found. Further, the Applicant has not shown that counsel was deficient in that choice of tactics because Mr. Toole's own testimony at the PCR Hearing showed that he could only corroborate a part of the Applicant's story and could not speak to anything that occurred inside the victim's house, which was the actual scene of the crime. As such, this Court finds that the Applicant is unable to prove either ineffective assistance of counsel or resulting prejudice. Accordingly, this allegation is denied and dismissed.

*Failure to Object to the Indictment*

With respect to this claim, this Court again finds that the Applicant is unable to meet his burden of proof. This Court finds Counsel's testimony that he did not see anything objectionable regarding the indictments, and the indictment is a notice document which adequately stated the elements of the crime necessary to prove

burglary in the first degree to be credible, while simultaneously finding Applicant's testimony on this issue not to be credible. As such, this Court finds that the Applicant is unable to prove ineffective assistance of counsel or resulting prejudice. Accordingly, this allegation is denied and dismissed.

### Failure to Object to Jury Charge on Malice

With respect to this claim, this Court finds that Counsel's testimony that he did not see anything objectionable relating to the jury charge on malice because it comported with the law in place at the time to be credible, while simultaneously finding the Applicant's testimony on this issue not to be credible. In order for Counsel to have made an [sic] meaningful objection, he would have had to be clairvoyant. Attorneys are not required to be clairvoyant or anticipate changes in the law which were not in existence at the time of trial." Gilmore v. State, 314 S.C. 453, 445 S.E.2d 454 (1994), overruled on other grounds by Brightman v. State, 336 S.C. 348, 520 S.E.2d 614 (1999). As such, this Court finds that the Applicant is unable to prove ineffective assistance of counsel or resulting prejudice. Accordingly, this allegation is denied and dismissed.

### All Other Claims

Except as discussed above, this Court finds that the Applicant affirmatively waived the remaining allegations set forth in his application at the hearing. A waiver is a voluntary and intentional abandonment or relinquishment of a known right. Janasik v. Fairway Oaks Villas Horizontal Property Regime, 307 S.C. 339, 415 S.E.2d 384 (1992). A waiver may be expressed or implied. "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." Lyles v. BMI, Inc., 292 S.C. 153, 158-59, 355 S.E.2d 282 (Ct. App. 1987). The Applicant's failure to address these issues at the hearing indicates a voluntary and intentional relinquishment of his right to do so. Therefore, any and all remaining allegations are denied and dismissed.

### CONCLUSION

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

This Court advises Applicant that he must file and serve a notice of appeal within thirty (30) days from the receipt by Counsel of written notice of entry of judgment to secure the appropriate appellate review. See Rule 203, SCACR. Pursuant to

> <u>Austin v. State</u>, 305 S.C. 453 (1991), an Applicant has a right to an appellate Counsel's assistance in seeking review of the denial of PCR. Rule 71.1(g), SCRCP, provides that if the Applicant wishes to seek appellate review, PCR Counsel must serve and file a Notice of Appeal on the Applicant's behalf. Your attention is directed to South Carolina Appellate Court Rule 227 for appropriate procedures for appeal.

App. 3-18. Thereafter, on April 25, 2011, PCR counsel filed a Motion to Alter or Amend the PCR Court's Order. App. 78-85. On July 15, 2011, Assistant Attorney General Kaelon E. May filed a Return to Petitioner's Motion on behalf of the State. App. 86-98. On February 9, 2012, the PCR Court denied Petitioner's Motion to Alter or Amend. App. 19-24. PCR counsel filed a Notice of Appeal and a Petition for Certiorari on Petitioner's behalf. ECF Nos. 24-21, 24-22. In his Petition for Certiorari, Petitioner presented the following issues for review:

1. Did Petitioner receive ineffective assistance of counsel where his trial counsel failed to interview or call a witness of whom he was aware who could have corroborated a critical portion of Petitioner's testimony at trial?

2. Did Petitioner receive ineffective assistance of counsel where his trial counsel failed to object to improper statements made by the solicitor during closing argument in which the solicitor stated his personal opinion of Petitioner's guilt and vouched for the credibility of the State's witness?

3. Did Petitioner receive ineffective assistance of counsel where his trial counsel failed to object to the introduction of highly prejudicial evidence of money missing from the victim's residence that the prosecution conceded was not the basis of the burglary charge?

4. Did Petitioner receive ineffective assistance of counsel where his trial counsel made the decision to call a witness who was with Petitioner at the time of the alleged incident and had convictions for the same crimes Petitioner was charged with, without moving to exclude evidence of the witness's prior convictions?

5. Is there a fundamental fairness exception to the holding in *Belcher v. State* that its ruling would not apply to convictions challenged on post-conviction relief? If so, is Petitioner entitled to post-conviction relief where the trial judge charged the jury that it could infer malice based on the use of a "deadly weapon", a charge that was expressly rejected by *Belcher,* and where the only evidence of malice was the use of a clothes iron as an alleged "deadly weapon"?

ECF No. 24-22.  Assistant Attorney General John W. Whitmire filed a Return on behalf of the State, ECF No. 24-23, and Petitioner filed a Reply, ECF No. 24-24. After the case was transferred, *see* ECF No. 24-25, the South Carolina Court of Appeals denied the petition, and issued the Remittitur on August 13, 2014. ECF Nos. 24-26, 24-27. This federal habeas Petition followed and was filed on November 14, 2014. ECF No. 1.

III.    Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: The state erred in denying the Petitioner Post-Conviction Relief based on trial counsel was effect for failing to object to jury instructions. ECF No. 1 at 5.

> GROUND TWO: The state collateral court unreasonably applied Strickland v. Washington, where trial counsel performance at trial was deficient in a cumulative effect. *Id.* at 6.

> GROUND THREE: A. Failed to call a corroborating witness; B. counsel's decision to call witness with prior conviction of assault, burglary, same as the Petitioner. *Id.* at 8.

> GROUND FOUR: C. Failed to object to solicitor's improper comment; I. Improper statement of personal opinion; and vouching for the credibility of state's witness. *Id.* at 10.

> GROUND FIVE:  PCR Court erred in finding that trial counsel's failure to object to the introduction of highly prejudicial evidence of money allegedly missing from Mr. Bryan's house did not constitute ineffective assistance of counsel. ECF No. 1-2 at 22.[2]

---

[2] Though Ground Five is not listed in the four corners of Petitioner's habeas application, it is included in Petitioner's "Memorandum of Factual Points and Legal Authorities Supporting Habeas Corpus Petition under 28 U.S.C. §2254." Therefore, the undersigned will address Ground Five in this analysis.

Petitioner attached a "Memorandum of Factual Points and Legal Authorities Supporting Habeas Corpus Petition under 28 U.S.C. §2254" totaling 60 pages. ECF No. 1-1, 1-2.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the

court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### C. Habeas Corpus Standard of Review

#### 1. Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

#### a. Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

"[E]ven a strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is

because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir.

2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his

ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal

determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court
> decision was either (1) "contrary to . . . [clearly] established Federal law as
> determined by the Supreme Court of the United States," or (2) "involved an
> unreasonable application of . . . clearly established Federal law, as determined by
> the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly

established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v.

Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a

state-court decision is "contrary to" clearly established federal law, the federal court may not

grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme

Court on a legal question, the state court decided the case differently than the Court has on facts

that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the

facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application"

portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or

erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.   Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review

and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural

15

bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

        a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

     (A)    the applicant has exhausted the remedies available in the courts of the State; or

     (B)    (i) there is an absence of available State corrective process; or

           (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644

F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.    Procedural Bypass

17

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and

prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

   3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

  IV. Analysis

A.  Procedurally Barred Grounds

Respondent concedes that Petitioner's Grounds were raised on PCR and on PCR appeal. ECF No. 24 at 27-28. Therefore, all of Petitioner's Grounds for habeas have been exhausted and are properly before the court for a review on the merits.

B.  Merits

In Grounds One through Five Petitioner alleges ineffective assistance of trial counsel. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1.   Ineffective Assistance of Trial Counsel - Jury Instructions

Petitioner maintains he received ineffective assistance of trial counsel because his trial counsel failed to object to erroneous jury instructions. ECF No. 1-1 at 4. Simultaneously, Petitioner argues that the South Carolina Court of Appeals erred in holding that the trial court "properly charged the jury regarding malice aforethought [and was] without error." *Id.* at 5.[3]

---

[3] The issue raised in Petitioner's habeas petition was trial counsel's alleged error in failing to object to the jury instructions, and the undersigned will address this issue on the merits. The issue raised in Petitioner's direct appeal concerns an issue of applying South Carolina criminal

Respondent argues Petitioner fails to show that the PCR court made an unreasonable determination of the facts in denying relief on this claim and fails to show that the PCR court unreasonably applied federal law in denying relief upon this claim. ECF No. 24 at 30. Specifically, Respondent argues that the PCR court reasonably applied *Strickland*. *See id.* at 30-32.

During Petitioner's criminal trial, the victim, Hubert Bryan, testified that on the day of the incident, he saw Petitioner's brother, Reginald Tyrone Davis, inside his home. App. 423-24. Mr. Bryan testified that upon seeing him he pulled out a pistol from his pocket and told Davis to "get out." App. 424. After Petitioner's brother left the residence, Mr. Bryan testified that he picked up his telephone to call the Sheriff. *Id.* at 424-25. Next, Mr. Bryan testified that Petitioner then came "out from the kitchen and he was gonna run over and hit me." *Id.* at 425. Mr. Bryan testified that Petitioner then hit him with a clothes iron that Petitioner had retrieved from the kitchen. *Id.* at 425-26. Specifically, Mr. Bryan testified that Petitioner hit him in his "temple," and after he was struck he "tussled with [Petitioner], and he jumped up, and run back in the kitchen[,] and picked up somethin' and run back out." *Id.* at 426.

Petitioner's use of the iron in striking the victim led to a jury instruction concerning malice.[4] However, prior to the jury instruction, Petitioner's trial counsel moved for a directed verdict on the ABWIK charge arguing:

---

law. As it is not the province of this court to re-examine state law determinations on state-law questions, the undersigned would not recommend granting Petitioner habeas relief even if that issue was addressed on the merits. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Chance v. Garrison*, 537 F.2d 1212, 1215 (4th Cir. 1976).

[4] In this habeas Petition, Petitioner does not contest that he used an iron to strike the victim. During his trial testimony, Petitioner testified that he "just picked up an iron and hit [the victim] so he would drop the gun so [Petitioner] wouldn't get shot." App. 577. Petitioner's legal argument only concerns the jury charge and not whether he struck the victim with the iron.

> In regards to the intent to kill issue, you take all the evidence that's been provided by the State in regards to one hit, 13 stitches, blood on the floor, a cut that has stopped bleeding 8 minutes after it was inflicted; one blow; the availability of a gun; no further blows from [Petitioner]. No one's testified to any further attack by [Petitioner]; that [Petitioner] fled rather than continue that attack, and we have a witness, the only medical witness the state provided which states that the wound is not life threatening. In regards to that it is clearly the totality of the circumstances that the state has failed to meet their burden in regards to showing the adequate requisite intent to kill.

App. 511. The trial court denied Petitioner's directed verdict motion and held "[i]t's a jury issue." *Id.* The trial court also denied Petitioner's motion for a directed verdict on the first-degree burglary charge. *Id.*

During its jury instruction on ABWIK, the trial court explained the difference between assault and battery. App. 694. The trial court explained that ABWIK has four elements and is "an unlawful act of violent injury to the person of another accompanied with malice aforethought." *Id.* at 694-95. Further the trial court instructed:

> Malice is an essential element of [ABWIK]. The malice must be aforethought. Thought of just before and at the time the blow was struck.
>
> It's not required that the malice exists for any particular length of time, but it has to exist in the mind of the accused just before and at the time of the commission of the act, the striking of the other person.
>
> So what do we mean by malice?  Malice imports wickedness, and it excludes any just cause or legal excuse. Malice springs from depravity, from a depraved spirit, from a heart devoid of social duty and fatally bent on mischief. It does not necessarily import ill will toward the specific person who is injured, but rather, it signifies a general malignancy towards and recklessness for the life and safety of another or a condition of the mind that shows a heart devoid of social duty and fatally bent on mischief. There has to be a combination between this evil intent existing aforethought, just before and at the commission of the battery, and the act producing the battery.
>
> Now, obviously, folks, malice is a state of mind. The state has to prove to you that the element of malice existed by either direct evidence or circumstantial evidence or a combination of both. If you deemed it appropriate, malice can be inferred from the use of a deadly weapon, but this inference is evidentiary only and is to be considered by you if at all, along with all the other evidence in the case and give it such weight, if any, that you determine that it should receive. If you decide to consider the inference of malice from the use of a deadly weapon, but the instrument that was actually used is not normally considered to be a

> deadly weapon, the state must prove that the item used was, under the circumstances, sufficient to constitute a deadly weapon and that [Petitioner] knew at the time of its potential to be a deadly weapon or that [Petitioner] used this instrument with reckless disregard for its potential as a deadly weapon.

App. 694-96. Thereafter the trial court described the elements of the lesser included offense of ABHAN. *See* App. 696-96. In its description, the trial court explained that "malice is not required for the lesser offense." *Id.* at 696.

After the trial court charged the jury, Petitioner's counsel renewed Petitioner's objections pursuant to Rule 20 of the South Carolina Rules of Criminal Procedure "in regards to the instruction as to malice with the general intent to kill." *Id.* at 702. The trial court denied trial counsel's motion and stated, "you and I just have a fundamental disagreement as to the meaning of the specific intent and general intent." *Id.* After this ruling, during jury deliberations, the trial court received a note from the jury asking for "clarification between intent to kill and the lesser offense of assault." *Id.* The court noted that the word "malice" was underlined in the jury's question. *Id.* The trial court then brought the jury back into the courtroom and re-read the previous instructions given on ABWIK and ABHAN. *Id.* at 703-07.

The PCR court denied Petitioner relief on his ineffective-assistance-of-counsel claim for trial counsel's failure to object to the jury instructions concerning malice. *See* App. 16. There, the PCR court found:

> Counsel's testimony that he did not see anything objectionable relating to the jury charge on malice because it comported with the law in place at the time to be credible, while simultaneously finding the Applicant's testimony on this issue not to be credible. In order for Counsel to have made an [sic] meaningful objection, he would have had to be clairvoyant. Attorneys are not required to be clairvoyant or anticipate changes in the law which were not in existence at the time of trial." Gilmore v. State, 314 S.C. 453, 445 S.E.2d 454 (1994), overruled on other grounds by Brightman v. State, 336 S.C. 348, 520 S.E.2d 614 (1999). As such, this Court finds that the Applicant is unable to prove ineffective assistance of counsel or resulting prejudice. Accordingly, this allegation is denied and dismissed.

23

*Id.*

The PCR court summarized trial counsel's PCR hearing testimony and found that trial counsel "did not object [to the jury charge on malice] because he felt the charge followed the law applicable at the time of trial." App 9. Further, the PCR court found trial counsel testified that "the law regarding malice has changed since then, but that he would not have known the law was going to change, and is not clairvoyant." *Id.* Further, the PCR court summarized:

> [Trial] Counsel testified that his trial strategy was to attempt to get rid of the burglary charge by negating the element of intent. He asserted that he also sought to get the [ABWIK] charge lessened to an [ABHAN]. Counsel stated that he did not think there was any way to get [Petitioner] out of all the charges, so he felt this was the best path to take.

*Id.*

Here, Petitioner argues that the South Carolina Supreme Court case of *State v. Belcher*, 685 S.E.2d 802 (2009), expressly rejected the jury instruction that malice can be inferred from use of a deadly weapon. ECF Nos. 1-1 at 6-7; ECF No. 37 at 19. Initially, the undersigned notes that the PCR court determined that Petitioner's trial counsel did not err in failing to object to a jury instruction, and jury instructions are matters of state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Chance v. Garrison*, 537 F.2d 1212, 1215 (4th Cir. 1976) ("Normally, instructions to the jury in state trials are purely matters of state law and procedure and it is only in circumstances where the instructions impugn fundamental fairness or infringe upon specific constitutional protections that a federal question is presented."); *Taylor v. Warden at Allendale*, No. 2:13-2213-RMG-WWD, 2014 WL 4716443, at *6 (D.S.C. Aug. 1, 2014) *report and recommendation adopted as modified*, No. 2:13-CV-2213-RMG, 2014 WL 4721183 (D.S.C. Sept. 22, 2014) *appeal dismissed*, 594 F. App'x 186 (4th Cir. 2015) *cert. denied sub nom. Taylor v. Pate*, 136 S. Ct. 323 (2015) ("To the extent Petitioner argues the

charge was erroneous under South Carolina law, such a claim is not cognizable on federal habeas review.").

As explained in *Belcher*, the due process of clause of the Fourteenth Amendment may be violated when "a jury charge creates a mandatory presumption and impermissibly shifts the burden of proof to the defendant." 685 S.E.2d at 808 (citing *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979); *Mullaney v. Wilbur*, 421 U.S. 684, 703-04 (1975)).[5] Petitioner was tried in August of 2004 and the South Carolina Supreme Court issued the *Belcher* decision in October of 2009. Petitioner correctly stated the *Belcher* holding that "the 'use of a deadly weapon' implied malice instruction has no place in a murder (or assault and battery with intent to kill) prosecution where evidence is presented that would reduce, mitigate, excuse or justify the killing (or the alleged assault and battery with intent to kill)." 685 S.E.2d at 809. However, the *Belcher* court explained, "Because our decision represents a clear break from our modern precedent, today's ruling is effective in this case and for all cases which are pending on direct review or not yet final where the issue is preserved . . . . Our ruling, however, will not apply to convictions challenged on post-conviction relief." *Id.* at 810.

As the PCR court determined, Petitioner's trial counsel had no basis on which to object to the trial court's jury instruction on inferred malice because the instruction given was current and valid based on South Carolina precedent at that time. The undersigned finds that the PCR court's finding on trial counsel's effectiveness was reasonable because trial counsel had no legal precedent for challenging the jury instruction. *See Taylor v. Warden at Allendale,* No. 2:13–2213–RMG–WWD, 2014 WL 4716443 (D.S.C. Aug. 1, 2014) (finding trial counsel was not

---

[5] The undersigned is tasked with reviewing whether the PCR court reasonably applied *Strickland* to Petitioner's case. Whether the jury instruction given was a due process violation because it impermissibly shifted the burden of proof to the defendant is not properly before the court.

required to be clairvoyant or to anticipate changes in the laws that were not in existence at the time of trial) (citing *Gilmore v. State,* 445 S.E.2d 454 (S.C. 1994)). Further, the undersigned finds that the PCR court correctly relied on the Supreme Court's holding that *Belcher*'s application was not retroactive and could not be used to challenge convictions in PCR applications. *See Belcher,* 685 S.E.2d at 810; *see also Henry v. Warden of McCormick Corr. Inst.*, No. 1:14-4343-BHH-SVH, 2015 WL 7769459, at *7 (D.S.C. Nov. 5, 2015) *report and recommendation adopted*, No. 1:14-CV-4343-BHH, 2015 WL 7776898 (D.S.C. Dec. 1, 2015). Therefore, the undersigned finds the PCR court's application of *Strickland* was not unreasonable. Accordingly, this habeas ground should be dismissed.

2.    Ineffective Assistance of Counsel - Cumulative Effect

In his second habeas ground, Petitioner argues that "the state collateral court unreasonably applied Strickland v. Washington, where trial counsel performance at trial was deficient in numerous respects, each of which cumulatively prejudiced the Petitioner, if not separately." ECF No. 1-1 at 23. Furthermore, Petitioner argues "[e]ach error of trial counsel exacerbated the other issues in respect to the credibility in which each, the Petitioner, and Mr. Bryan relied on during trial." ECF No. 1-2 at 28. Respondent argues that the PCR court did not unreasonably apply federal law in denying this claim and focuses much of his argument on trial counsel's failure to call a witness. The undersigned will address trial counsel's alleged error to call this particular witness in the following section. The PCR court did not specifically address the cumulative effect of trial counsel's errors in its order of dismissal.[6] However, the PCR court held that Petitioner "affirmatively waived the remaining allegations set forth in his application at

_____

[6] The undersigned notes that the totality of trial counsel's errors was raised in Petitioner's Amended PCR application, *see* App. 71-72, and later in Petitioner's petition for writ of certiorari, *see* ECF No. 24-22 at 5.

the hearing." App. 17. Based on Petitioner's attempts to raise this issue to the PCR's court's attention, the undersigned will address the merits of the cumulative error issue.

As discussed above and as will be discussed in the following sections, the undersigned finds that none of the issues raised by Petitioner amounted to error. Furthermore, in nearly all instances, trial counsel had valid strategic reasons for his actions taken during Petitioner's trial. Therefore, Petitioner cannot aggregate the alleged errors to form a constitutional violation. *See Fisher v. Angelone*, 163 F.3d 835, 852–853 (1998), *cert. denied*, 526 U.S. 1035 (1999) (holding that various claims of ineffective assistance of counsel, like claims of trial error, would not entitle petitioner to relief because a cumulative error analysis would apply only to the effect of those matters actually determined to be constitutional error and not the cumulative effect of all matters alleged or deemed deficient). Moreover, the Fourth Circuit Court of Appeals rejected an independent claim of cumulative error. *See Fisher v. Angelone,* 163 F.3d at 852; *Sears v. Dunlap*, No. 0:13-CV-00688-TLW, 2014 WL 1154625, at *11 (D.S.C. Mar. 21, 2014). Therefore, to the extent it is necessary to address the cumulative error claim on the merits, the undersigned recommends this ground be dismissed.

3.    Ineffective Assistance of Counsel - Failing to call corroborating witness and calling witness with certain prior convictions

In Petitioner's third ground, he argues that trial counsel was ineffective for failing to call corroborating witnesses and for calling a certain witness who had prior convictions. ECF No. 1 at 8. Petitioner argues that a critical component of his defense was that he and "his brother entered Mr. Bryan's residence in an effort to purchase gasoline [and] [t]rial counsel failed to procure an unbiased witness that would have corroborated Mr. Davis (the Petitioner's brother, and codefendant), and [his] testimony in that regard." ECF No. 1-1 at 23-24. Specifically, Petitioner argues that Johnny Toole should have been called as a witness and could have

corroborated his and his brother's story about needing gas. *Id.* at 24. Additionally, Petitioner maintains that his brother, Mr. Davis, had a prior conviction for burglary and assault and battery, and evidence of these convictions was presented to the jury for impeachment purposes. *Id.* at 25. Petitioner argues that his brother's impeachment placed him at a disadvantage. *Id.*

Respondent argues that Petitioner cannot show that the PCR court unreasonably applied federal law in denying this claim for relief. Further, Respondent maintains that trial counsel testified that "it was part of his strategy to corroborate Petitioner's version of events, and Mr. Davis, Petitioner's brother, could accomplish that task." ECF 24 at 36. Respondent's argument mainly focuses on trial counsel's decision to call Mr. Davis as a witness and does not discuss trial counsel's failure to call Mr. Toole as a witness. *See id.* at 36-38. The undersigned will address each of Petitioner's arguments in turn.

a)    Failure to call Johnny Toole as a Witness (Ground 3(a))

Regarding trial counsel's failure to call Johnny Toole as a witness, the PCR court held:

> With respect to this claim, this Court again finds the Applicant is unable to meet his burden of proof. This Court finds Counsel's testimony that he attempted to find Mr. Toole to be credible, while also finding Counsel's testimony that calling Mr. Toole to the stand would have been a risk because at most he could corroborate only a part of the Applicant's story and at worst could damage the Applicant's credibility by telling a different story to be a matter of trial strategy. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) *and* McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, Counsel articulated valid strategic reasons for not calling Mr. Toole to testify even if he could be found. Further, the Applicant has not shown that counsel was deficient in that choice of tactics because Mr. Toole's own testimony at the PCR Hearing showed that he could only corroborate a part of the Applicant's story and could not speak to anything that occurred inside the victim's house, which was the actual scene of the crime. As such, this Court finds

that the Applicant is unable to prove either ineffective assistance of counsel or resulting prejudice. Accordingly, this allegation is denied and dismissed.

App. 15.

During the PCR hearing, trial counsel testified that he did not clearly remember Mr. Toole. App. 120. Further, trial counsel testified that he "followed the instructions of his client in regards to how to obtain contact with [Mr. Toole], talked to his family and attempted to locate him." App. 122.  Trial counsel testified that recalled that on the day of the incident in question Mr. Toole took Petitioner and his brother to get a gallon of gas in a plastic jug because Petitioner's car was out of gas. App. 123-24. Further, trial counsel agreed that Mr. Toole was "an important witness that could verify that that in fact occurred. . ." App. 124. However, trial counsel agreed that Mr. Toole would have no "recollection of anything that happened inside [the victim's] house" because he was not there. App. 154. Additionally, trial counsel agreed that Petitioner's brother corroborated Petitioner's story about needing to get gas on the morning of the incident. Because two witnesses had already testified that they had gone to get gas, Mr. Toole's testimony would have been cumulative. *Id.*

During the PCR hearing, Mr. Toole testified that the Solicitor had contacted him before Petitioner's criminal trial, but Petitioner's trial counsel did not. App. 174. Mr. Toole also testified that on the morning of the incident he drove Petitioner's brother, Mr. Davis, home from work. App. 174. When they arrived at Mr. Davis's residence, Mr. Toole testified that Petitioner came out and said they were out of gas. App. 175. Mr. Toole testified that he took Petitioner and Mr. Davis to get some gas at the County Line store.[7] App. 176. Specifically, Mr. Toole testified

---

[7] Mr. Toole testified that County Line Store was a different gas station than the victim's gas station. App. 178.

29

that the men got about a gallon of gas and he assumed that "they'd stop at a gas station once they got in [Petitioner's] car." App. 177.

The undersigned finds that trial counsel did not err in failing to call Mr. Toole as a witness during Petitioner's criminal trial. However, even if trial counsel had erred in failing to call Mr. Toole as a witness, the undersigned finds it to be harmless error. As the PCR court found, Mr. Toole's testimony offered little value because "he could not speak to anything that occurred inside the victim's house, which was the actual scene of the crime." App. 15. In other words, the undersigned finds that there is not a reasonable probability that, but for counsel's alleged error, the result of Petitioner's criminal trial would have been different. Further, as discussed during the PCR hearing, Petitioner and his brother testified regarding what transpired on the morning of the incident, prior to their entry of the victim's home. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the PCR court erred in finding his trial counsel was effective under *Strickland*. The undersigned does not find that the PCR court's legal analysis under *Strickland* was objectively unreasonable. Here, Petitioner has failed to show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Furthermore, the undersigned does not find that the state court unreasonably applied a governing legal principle or made an unreasonable determination of the facts in light of the evidence pursuant to § 2254(d)(1). As a result, the undersigned recommends granting Respondent summary judgment concerning this Ground and dismissing it as it is without merit.

b)     Calling Mr. Davis as a witness (Ground 3(b))

Regarding trial counsel's decision to call Mr. Davis as a witness, the PCR court held:

With respect to this claim, this Court finds that the Applicant has failed to meet his burden of proof. This Court first finds Counsel's testimony that the Applicant wanted Counsel to call his brother to testify to be credible, while simultaneously finding the Applicant's testimony on this issue not to be credible. Next, this Court finds Counsel's testimony that it was a strategic decision to call Mr. Davis to the stand because he was the only person who could corroborate the Applicant's entire version of events to be credible. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) and McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, Counsel articulated valid strategic reasons for calling Mr. Davis to the stand. Further, this Court notes that Rule 609, as quoted by the Applicant, addresses the entry of the **defendant's** prior offenses into evidence, and further notes that witnesses are subject to a different standard. As such, this Court finds that the trial court would have likely allowed evidence of the witness's prior convictions in even if Counsel had made a motion in limine or objected to the State's line of questioning. In any event, as articulated by PCR Counsel, the convictions were Mr. Davis's, not the Applicant's. Therefore, this Court finds that the probative value of having a corroborating witness to the Applicant's version of evidence would be greater than the potential prejudice from calling that witness. As such, the Applicant has not shown that counsel was deficient in that choice of tactics. Therefore, this Court finds that the Applicant is unable to show that Counsel provided ineffective assistance of counsel, or prejudice resulting therefrom. Accordingly, this allegation is denied and dismissed.

App. 12-13.

During the PCR hearing, trial counsel testified that he believed Mr. Davis was a very important witness, and he could not have established the exact same testimony through another witness. App. 113. Specifically, trial counsel testified he would not have been able to establish "[t]he actual personal knowledge of what he -- when they were alone in Mr. Bryan's house." App. 114. Though trial counsel agreed that Petitioner could have testified in that regard, he testified that Petitioner's testimony "wouldn't have been buttressed by his brother." *Id.* Trial counsel testified that he was concerned that Mr. Davis may implicate Petitioner in his testimony,

and he was aware of Mr. Davis's prior convictions. *Id.* at 114-15. Trial counsel agreed that Mr. Davis's recounting of the events was nearly identical to Petitioner's. App. 120.

> Later trial counsel testified:
>
> [T]he strategy was we admit that – we were going to admit that we entered the – that [Petitioner] entered the house, that he defended his brother, and all we were focusing on was that intent to kill, the specifics. We were trying to get that reduced, to make the jury believe that he did not intend to kill Mr. Bryan. That was our focus. It was not to get him off on every -- on every single charge. We had spoken about what our strategy was and we talked about truth.

App. 130. Furthermore, trial counsel testified that it was part of his trial strategy to call Mr. Davis as a witness "[t]o affirm everything that [Petitioner] was going to say." App. 151. Trial counsel reasoned that "Mr. Davis would be able to testify to all things that happened in the house because he was in the house with [Petitioner]." *Id.* Trial counsel also testified that "[i]f the jury believed [Petitioner] and Mr. Davis, they would believe that all they were attempting to do was purchase some gas, yell out to meet Mr. Bryan and poke their head in like they had testified they had done before." App. 159. Trial counsel agreed that the strategy would "negate the intent to commit a crime." App. 160. Finally, trial counsel testified that Petitioner wanted his brother to testify; that they "discussed the entire case;" and that they discussed the effect of his brother's convictions. App. 170.

This undersigned finds Petitioner failed to meet his burden of proving trial counsel erred in calling his brother as a witness. Rather, during the PCR hearing, trial counsel specifically testified that Petitioner requested that his brother be called as a witness. Furthermore, trial counsel testified that it was part of his trial strategy to call Mr. Davis to corroborate Petitioner's story and negate the intent to commit the crime. The PCR court held that trial counsel made a strategic decision to call Mr. Davis as a witness. App. 12. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed

ineffective assistance. *Hamilton v. Warden, Lieber Corr. Inst.*, No. 5:13-2506-MGL, 2015 WL 251243, at *17 (D.S.C. Jan. 20, 2015) (noting that where trial strategy is concerned in an ineffective-assistance-of-counsel claim, the United States Supreme Court has stated, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"); *Whitehead v. State,* 417 S.E.2d 530 (S.C. 1992); *see also Dempsey v. State,* 610 S.E.2d 812 (S.C. 2005). The undersigned finds that Petitioner has not shown that counsel was deficient in his choice of tactics. Furthermore, the undersigned finds that there is not a reasonable probability that, but for counsel's alleged error, the result of Petitioner's criminal trial would have been different had Mr. Davis not testified as a witness.

Therefore, the PCR court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Ground Three (b) is without merit and should be dismissed.

4.     Ineffective Assistance of Counsel - Solicitor's Improper Comment

Petitioner maintains "trial counsel was deficient for failing to object to the solicitor's statement of personal opinion concerning [Petitioner's] guilt and the solicitor's improper vouching for the credibility of the state's witnesses." ECF No. 1-2 at 11. Respondent argues that Petitioner is not entitled to federal habeas relief on this claim. ECF No. 24 at 38.  The PCR court

made the following finding concerning Petitioner's ineffective-assistance-of counsel claim and the solicitor's closing argument:

> With respect to this claim, this Court again finds that the Applicant has failed to meet his burden of proof. This Court finds Counsel's testimony that he saw nothing particularly objectionable about the Solicitor's statements in closing, and that it was his practice not to object in closing unless comments were egregious as not to draw further attention to them to be credible, and further finds that it was a strategic choice made by Counsel during trial. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) *and* McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, Counsel articulated valid strategic reasons for not voicing an objection during the Solicitor's closing argument. Further, the Applicant has not shown that counsel was deficient in that choice of tactics. As such, this Court finds the Applicant is unable to show either ineffective assistance of Counsel or resulting prejudice. Accordingly, this allegation is denied and dismissed.

App. 13.

This undersigned finds Petitioner failed to meet his burden of proving trial counsel should have objected or moved for a mistrial during the Solicitor's closing argument. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974). In *United States v. Harrison,* 716 F.2d 1050 (4th Cir. 1983), the Fourth Circuit set forth the following four factors to be examined to determine whether a prosecutor's comments were so damaging as to require reversal: "(1) the degree to which remarks misled the jury and prejudiced the defendant; (2) whether remarks were isolated or extensive; (3) whether absent the remarks, competent evidence established guilt; and (4) whether comments were deliberately placed before the jury to divert attention to extraneous matters."

The undersigned has reviewed the Solicitor's closing argument, *see* App. 667-86, and finds that it was not unreasonable for the PCR court to find that Petitioner failed to meet his burden of showing that the solicitor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process" pursuant to *Donnelly*. Furthermore, the PCR court held that trial counsel made a strategic decision to not object to the solicitor's closing argument, *see* App. 12, and where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Hamilton*, No. 5:13-2506-MGL, 2015 WL 251243, at *17; *Whitehead v. State*, 417 S.E.2d 530; *Dempsey v. State*, 610 S.E.2d 812 (S.C. 2005). Therefore, the undersigned finds that the PCR court's finding was supported by the record, and the decision was not contrary to, nor an unreasonable application of, clearly established federal law under § 2254(d)(1). Accordingly, the undersigned therefore recommends that Ground Four be dismissed.

> 5.    Ineffective Assistance of Counsel - Failure to object to the introduction of evidence

Petitioner argues that trial counsel was ineffective for failing to object to Mr. Bryan's testimony that $2,500.00 was missing from his home after the incident. ECF No. 1-2 at 22. Petitioner represents that "[t]his was the first [he], or trial counsel had heard of any money missing from the home of Mr. Bryan." *Id.* Petitioner argues that trial counsel should have asked for a continuance so that he could investigate the allegation of the missing money and come up with a proper defense. *Id.* Respondent does not address this argument. Therefore, the undersigned will review whether the PCR court reasonably applied *Strickland* in this case.

In addressing the merits of this issue, the PCR court held:

> With respect to this claim, this Court again finds that the Applicant has failed to meet his burden of proof. This Court finds that Counsel's testimony, as well as the Solicitor's testimony, that they were not aware of the missing money until a few

weeks prior to trial to be credible. This Court also finds Solicitor's testimony regarding why no one spoke with the victim for an extended period of time prior to trial to possibly gain this information to be credible. Further, this Court finds that Counsel's testimony as to why he did not attack the victim on cross-examination regarding the issue, because he was an elderly, sympathetic figure and attacking him could impact the jury's view of his case negatively, to be credible, and a matter of trial strategy. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). See also Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) and McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, Counsel articulated valid strategic reasons for choosing such a tactic. Further, the Applicant has not shown that counsel was deficient in that choice of tactics as he has not shown that a different result would have been obtained if the money issue was further investigated. As such, this Court finds that the Applicant is unable to show that Counsel provided ineffective assistance for his actions regarding this issue. Finally, this Court notes that even assuming money had not been stolen from the residence, or assuming that Counsel had made a motion to exclude evidence of the money and won, the State was still able to prove the Applicant's unlawful entry, intent to commit a crime, and bodily injury done to the victim, and further notes that these elements alone were enough to satisfy the element of burglary. As such, even if the Applicant could show that Counsel provided ineffective assistance in this area, he is unable to prove resulting prejudice. Accordingly, this allegation is denied and dismissed.

As Petitioner represents, the victim, Mr. Bryan, testified that $2,500.00 was missing when he inspected his house after the intrusion. App. 432. During the PCR hearing, trial counsel testified that he found out about the missing $2,500.00 on the day the victim testified. App. 126. Furthermore, trial counsel admitted to not asking for a continuance when he learned of the missing money and opted to focus on their existing defense strategy. App. 127. Trial counsel testified that "[a]ll [he] could do was cross-examine [the victim] at that point." App. 128. On cross-examination at the PCR hearing, trial counsel testified that a conviction for first-degree could be attained without the $2,500.00 missing money allegation. App. 155. Furthermore, trial

counsel testified that it was part of his trial strategy to ask only a few questions during the victim's cross-examination, especially because the victim was "very sympathetic." App. 156.

The undersigned finds that Petitioner has failed to demonstrate what an investigation into the missing money would uncover. Therefore, the undersigned finds Petitioner has failed to demonstrate any error by trial counsel. However, even if error occurred, as the PCR court held, the State would have been able to prove the necessary elements of first-degree burglary without the allegation that $2,500.00 was missing from the victim's residence. Specifically, the PCR court held: "[T]he State was still able to prove the [Petitioner's] unlawful entry, intent to commit a crime, and bodily injury done to the victim, and further notes that these elements alone were enough to satisfy the element of burglary." The undersigned finds the PCR court's finding is a correct statement and application of law. According to section 16-11-311(A) (2003) of the South Carolina Code:

> A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and either:
> (1) when, in effecting entry or while in the dwelling or in immediate flight, he or another participant in the crime:
> (a) is armed with a deadly weapon or explosive; or
> (b) causes physical injury to a person who is not a participant in the crime; or
> (c) uses or threatens the use of a dangerous instrument; or
> (d) displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or
> (2) the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or
> (3) the entering or remaining occurs in the nighttime.

*See also State v. Gilliland*, 741 S.E.2d 521, 526 (S.C. Ct. App. 2012) (applying section 16-11-311(A)). Therefore, Petitioner has failed to demonstrate resulting prejudice from the alleged error of trial counsel.

Furthermore, the PCR court held that trial counsel made a strategic decision to not attack the victim on cross-examination, *see* App. 14, and where counsel articulates valid reasons for

employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Hamilton*, No. 5:13-2506-MGL, 2015 WL 251243, at *17; *Whitehead v. State,* 417 S.E.2d 530; *Dempsey v. State,* 610 S.E.2d 812 (S.C. 2005). Therefore, the undersigned finds that the PCR court's finding was supported by the record, and the decision was not contrary to, nor an unreasonable application of, clearly established federal law under § 2254(d)(1). Accordingly, the undersigned therefore recommends that Ground Five be dismissed.

V.    Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 25, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

January 28, 2016                                     Kaymani D. West
Florence, South Carolina                       United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**